Thank you and good morning. Mark Dillon for plaintiffs and appellants, village communities, and related entities. We thank the court for this time and we'd like to use 15 minutes for opening and reserve five minutes for rebuttal. The appeal presents six issues. Today we're going to address three of the six issues and stand on our briefing as to the other issues on appeal. The first issue in summary focuses on the grant of summary judgment on the grounds that plaintiffs failed to provide evidence that the easement condition was a demand for money or property under Koontz. Second issue, the grant of summary judgment, Sui Sponte. Third issue, the ruling to exclude all West Lilac Road resident testimony in the eliminate motion stage. Turning to the first issue, there is no dispute in this record that the county imposed the off-site easement condition and that it applied to all 50 West Lilac Road residents, some of whom opposed the development project, as a pre-project condition. The only issue is whether our evidence establishes a genuine issue of material fact that the easement condition was a demand for money or property under Koontz and it was such a demand. So, counsel, Koontz talks about where a permit is denied and the condition is whether in that circumstance federal law provides a remedy for a damaged recovery. The Koontz court said we're not reaching that because in Koontz we're dealing with Florida law. Here, we're dealing only with federal law, right? We're dealing with the takings clause and section 1983. Yes. So, is there any case in the U.S. Supreme Court or any court of appeals which has held that in the circumstance here, where the permit is denied and the condition is never imposed, there is a remedy under 1983 for damages? The question the Supreme Court said it wasn't reaching in Koontz. Is there any case you can point to where the Supreme Court or any court of 1983 are available? Your Honor, first and foremost, I'm not aware of a case. Second, that issue is beyond the issues presented in this appeal. Well, that may or may not be, but you're not aware of any case which has said yes, under 1983, in that circumstance, damages are available. And I answered, I'm not aware of such a case. And you are not advancing a Penn Central claim here, right? No, I'm not. Your claim is strictly for inverse condemnation. Our claim is for violation of the takings clause, inverse condemnation, under the In any of those cases, was there ever a factual circumstance like here where the demand of the county was that your client obtain the easement? I've looked at the easement document and it says that the grantee is your client. So, is there any case which says that in a circumstance where the county is demanding that your client obtain a property interest, that that can constitute a Nolan-Dolan type of taking? Well, this is this case that does that. Is there any case that says Nolan-Dolan is triggered when the government entity says, you, applicant, have to acquire some additional real property interest that you hold. Is there any case that says that that triggers Nolan-Dolan? Koontz does, Your Honor. Okay, well, I don't see where Koontz says that, but go ahead. Is there a position that Koontz is triggered because it was going to cost money to obtain these easements? Absolutely. Right. And that you would, in some cases, that you could have holdouts on the easements, and so it could be quite extortionate. Extortionist and an impossible. And what about a veto? What about a neighbor that just said not in my backyard? Well, so let me just, Judge Wardlaw is asking a question about there could be a holdout so the price could go up and it could be extortionate, and I heard you say yes to that. Yes. So, but it seems to me it's a separate question about whether the condition, and this was a precondition to considering the project, is my understanding. Right. Right. That there could be a neighbor who just said, I don't want 1,700 new homes across the street, and then at any price, unless I'm really misunderstanding this record. No, that is exactly right, and we have evidence in this record showing there were many opponents to. How does that trigger a takings clause claim? The cases that talk about extortionate demands are extortionate demands by the permitting agency for money or a property interest. Here, the demand was that you acquire for yourself some other interest. How is that a taking? Well, first of all, Your Honor, I feel like we're re-arguing Kuntz. In Kuntz, the whole point of the unconstitutional conditions doctrine is that it forbids burdening the Constitution's enumerated rights to the takings clause regardless of whether the government ultimately succeeds in pressuring us to provide these easements. Yes, but Kuntz talks about benefits going to the Florida entity. Here, the permitting agency was demanding that you yourself get some property interest that goes to you, and I don't see any case which says that can be a taking. Could I ask a follow-up on Judge Bennett's question? Is it right that the easement was supposed to remain with your client? Or was it supposed to be conveyed to the county? Under our second takings theory, based on the testimony of Fire Chief Deputy Nissen, the plan was, at final map, the plan was to require us by condition to give over those easements. And there was an objection based on speculation, and he said, well, looking at the deed, it allows for that, but I didn't see anything admissible in the Fire Chief's testimony that there was ever a demand from the county that this be conveyed to the county. Let's say you can't establish that, because I had a hard time nailing that down, and I'm not sure it's established, but let me just ask the follow-up question a different way. Even if the easement was to be held by your client, and I'm going to assume that for the purposes of this, the benefit seems to be this is also ticklish, right? Nobody, I think, is going to contest the need to make sure that the brush is cleared and the fire danger is abated, and this is a very reasonable and understandable goal. But it seems, if I'm reading the fire code correctly, the county has the ability to do that now and seek reimbursement from those property owners, right? So the benefit, it seemed to me, I'd like to hear your response, and both maybe lawyers could respond. I heard the Fire Chief, I guess I get confused between the Fire Chief and the Fire Marshal, but right, explain that the reason they wanted the easements is because otherwise the county, that had the authority to do this anyway, would have to go through a different process and there was going to be delay. That's right, and the county did benefit by this ask, by this demand for the purchase and securing of the easements. How did the county benefit if the easements were going to remain with your client? Because they wouldn't have to go through that consolidated fire code process and obtain them themselves. So how would they trigger it? So they short circuit that and they demand them from us. Wait a minute, so just, if you can back up, for me this is a very critical point. Yes. So let's say the easements stay with your client, all right, because I agree with Judge Bennett, I think the record's fuzzy on that point, and I think the record's very clear, the fire code allowed the county to do this anyway. So let's say they were going to stay, those easements stayed with your clients, then if the county decides it's time to clear the brush a year from now, two years from now, they would have the ability under the fire code to do this, but that takes time, and they would do what? What was contemplated about the, that the county could use the easements your clients were going to obtain in order to clear the brush? Would they have to go through any process? There would be no process they would have to go through under the consolidated code because they exacted from us 50 easements that we had to pay for. And the question of whether they stay with us. Counsel, I don't see that as answering Judge Kristen's question. You say they obtained it, but I don't, they, I saw nothing in the record where they demanded you obtain an easement for the benefit of the county or any demand that you somehow get the easement and transfer it. So to Judge Kristen's question, how would this easement in your name benefit the county? The county made it clear in the resolutions and the staff reports that this easement that they required we purchase and secure would be a safety benefit to the county. I mean, it's right in the resolution. The county's position, there's no need for the easements unless the developments there bringing in 1700 new houses and it was multi-purpose development. You don't need the easements because the road was adequate for the existing property owners to get out in case there was a wildfire. You only need the easements if you have this set in influx of additional traffic and people and marketing. And that's, your project is the only reason they needed, they would need to widen the road so that people could be evacuated in the case of wildfire. Your Honor, with respect, those issues go to the issues, if I was allowed to try this case, they would go to the issues of nexus and proportionality. Well, I mean, I think if you're agreeing to supply, so I'm looking at nexus and proportionality. What I'm trying to get at is those are, that's the disconnect that we would show at the time of trial. There was no nexus, no nexus study, no proportionality, all of which is not in this case. The damages that you would be seeking, you would ask us to rule that you get to go to trial on, because again, you were not asking in your complaint for any equitable relief. It was all legal relief, right, damages? Monetary damages. Okay, and the damages would be something like if we had gotten the permit, our property would have been worth $50 million. Without the permit, our property was worth $1 million. So because of the county saying we had to get this easement, we have $49 million the county has to pay us. The difference between what the property would have been worth had it been developed and what it was worth undeveloped? That is our measure of damage in this case, which is beyond the scope of this appeal. It's not beyond the scope of the appeal, in my view, because if we ruled in your favor, we would have to rule that the question the Supreme Court left open in Kuntz, we answer that with, yes, damages are available here. But, Your Honor, I first need to try the case, and we first need to win the case and establish damages. We're at this stage right now where we're looking at what I call a relatively low bar. Was there a material issue of disputed fact? And the evidence is legion on that. Hold on. What's the material disputed fact that you think should have presented an entry of summary judgment, please? We have shown that the county's demand for the easements, all 50, is a demand first for property because the easements are a property interest, and second, it is a demand for money because we can't get those easements for free. And the county expressed its intent that their intent was for us to purchase and secure those easements. Sarah Agassi's testimony is clear as a bell. All 50 easements would be required, and they would have to be purchased. No objection to that testimony. It alone is enough. But then we have the deed of easement, a county-required document, the one we were supposed to use, which absolutely contemplates on its face that we were going to have to pay consideration in exchange for those easements. This isn't a close case in terms of genuine issue of material fact. The evidence is all over the place. Because the district court ruled that summary judgment was appropriate because there wasn't any evidence that you were going to have to pay anything to obtain the easements, I think. That's right. And then we have the ward law testimony. We have more ward law testimony. No relation. I know. We have the ward law testimony, purchase and secure. We have the ward law testimony saying avoid the subdivision MAP Act by requiring them to get the easements so we don't have to get them if they can't get them. And that's another benefit, by the way. Wait, but aren't you really arguing that they made your client's development of the property impossible by saying we're not going to process? Even process the application to develop this property unless you have this impossible demand of obtaining 50 easements? It's two-pronged. It's on its face. Nobody gives away property for free, number one. And number two, the county knew, and the Slovic testimony establishes, that we had opponents residing along West Lilac Road who opposed the project. And the likelihood that we'd ever get an easement from them is nil. So we argued both. They took your property or they undercut, like the Tahoe case, they undercut the value of your property. You're not making that argument. You're just talking about the cost of the easements. I'm talking about an unconstitutional condition imposed on us for the demand, which was the easement condition, which was a demand for money and property. Is that in your view, as you wrote in your complaint, that this is inverse condemnation in your view? Your Honor, it is. And I've already quoted from the Kuhn's decision that the fact, under the unconstitutional condition doctrine, the fact, that fact alone is the problem. It burdens the Constitution's enumerated right. That's all I have to establish. What's the it in your sentence? The precondition that they obtained the easements. That's right. It impermissibly burdens your client's property rights. That's right. I think for two reasons. One is that it could be that there will be a holdout and the amount could be extortionate. And the second is I think there's nothing preventing those homeowners from refusing to sell at any price. That's all true. And the fact that the county made it clear that this was, the easement condition was a demand for money. It's clear on this record. And the fact that it wasn't recognized. Not money to be paid to the county. Not money to be paid to the county. No, we would have to expend the money to acquire the easements. And the Kuhn's case specifically says, we hold that the government's demand for property from a land use permit applicant must satisfy the requirements of Nolan and Dolan. There's nothing in Kuhn's that says, we hold that the government's demand that the applicant acquire property for itself must satisfy the requirements of Nolan and Dolan. Right? To the extent I understand, the answer is yes. But if we're going to talk Kuhn's, let's talk Kuhn's. In Kuhn's, they required that he give his property or that he improve wetlands off site. And that's all that they asked for. Now, the guy didn't go out and improve the wetlands. He didn't pay money to contractors to improve the wetlands. He said, baloney, I'm not going to accept this condition. And that was enough. And the denial of the permit was enough. And the demand for money was necessarily implied by the demand to improve off site property. Who owned the off site property? Pardon me? Who owned it? Who owned the off site property? Yeah. In Kuhn's? Yeah. I don't know. I just know that it was another, a third party property that they wanted improved. A third party property as opposed to public property? It was, I thought it was, well, first, either way, it's off site. It's off site property. It was off site property. Could I ask you this question? What's the best source in the record? I'm trying to figure out whether there's a genuine dispute about whether, from which, on this record, a jury could find that the condition did contemplate that your client would convey those easements to the county. What's the best evidence of that, sir? Well, the best evidence is the Nissen testimony that we cited in our briefing. But that's our secondary takings claim. Our first takings claim carries the day as far as I'm concerned. Thank you. You wanted to save time. You didn't. I'll let you have a few minutes in rebuttal. Thank you. Thank you, Counsel. Good morning, Your Honors, and may it please the Court. Katie Richardson on behalf of the County of San Diego and the San Diego County Board of Supervisors. I've listened to the Court's concerns, and I'm happy to address them. I do think it's important, just for a moment, to step back, because there are some procedural elements we need to get to before we get to the substance of the district court sui sponte summary judgment order. First, it's the county's position that it would make the most sense to begin the court's analysis with a determination of whether the district court's April 18, 2023, as it operated as the domino, if you will, in the chain of events that's led us here today. Now, it's the county's position that plaintiffs have improperly challenged that order for the first time on appeal. If this court agrees, that order stands. If the court disagrees, however, and determines that the order is properly reviewable, it must then determine whether the district court abused its discretion in issuing that order. And because plaintiffs have not demonstrated that the district court was manifestly erroneous in excluding that evidence as irrelevant. Are you talking about the neighbor's testimony? Yes, Your Honor. And also that in terms of the sui sponte summary judgment order, there is the notice and opportunity to respond that also needs to be considered prior to reaching the substance of the summary. Can you go back to the first point? Because I'm not sure it's going to be a great use. I won't focus on it. I just wanted to note it before. But the first order said that they, I think it was at your request, that there was a motion to eliminate that the property owner shouldn't be allowed to speak about what was basically a legal conclusion, their obligation to clear the brush and whatnot. And also conversations with plaintiffs and their evaluation. Right. And so that was granted. And then there's the follow-on order, which they, excluding the neighbors entirely, right? I don't agree that it was in any way expansive. I think that the court was simply reiterating the evidence that it had previously excluded in its eliminate order. So you don't think the court ever said that the neighbors were going to be excluded in total? I think that it would have excluded all of the neighbors' testimony that plaintiffs had indicated they intended to offer. Okay. I also do want to touch on one of the questions regarding the property at issue in Koontz. That was the water district's property. So it was government property. And, Your Honor, Ms. I think that's right. I think it was. But could you back up? We're really grappling, I think all three of us, with this notion of the easements. And so I'd like to hear your response about the problem of the holdout property owners, which I think could be twofold. But also, is there a dispute in this record about whether the county contemplated that those easements would remain held by the developer as opposed to being conveyed to the county? It wasn't decided at the point at which the recommendation went to the board because plaintiffs had said it's infeasible, we're not going to do it, and then so the planning committee made the recommendation to the board and the board formally denied. At the point at which the case resolved before the board, I'm sorry, in this case, the county had not determined what would ultimately happen. We have the deck. Sorry to interrupt, but what would ultimately happen? Who would ultimately own? Who would ultimately have responsibility for the easements? The county is concerned. So here's my question. Is there evidence in this record from which jurors could have decided that the county intended those easements to be conveyed to the county? I don't believe so, Your Honor, because the specific deed of easement form, pardon me, that plaintiffs rely on expressly states that the easement will be conveyed to plaintiffs. That's the part we know, that there's indications in the record. We appreciate that, and we appreciate there's a blank with a dollar sign on it, and so that's his argument, that it was going to require, you know, the payment of money to obtain the easements. I'm just trying to figure out the much narrower question. Is there anything in the record to indicate, isn't there, indication in the record that those easements were going to be conveyed to the county? I don't think that it's clear that it was ultimately determined.  Did the county ever make a demand? I'm sorry? Did the county, is there anything in the record where the county ever demanded from the developer that when you obtain these easements that we're requiring you to obtain that you will need to convey them to the county? No, Your Honor. And, in fact, the declaration of David Nissen states that the county's plan was for plaintiffs to utilize the easements, to conduct the initial vegetation management necessary to address the county fire's concern, and then to assign the easements. Did you mean to say only the initial remediation? Correct, and then I'm continuing on with this argument. And then to assign the easements to the project's future community facilities district or fire safe council to maintain the vegetation in perpetuity. The county's concern was that someone would have a guaranteed legal right and responsibility to enter the property and maintain the vegetation in perpetuity. But your biggest problem, I think, to be frank, is that the county already has that ability under the fire code. Your Honor, the county has a discretionary authority. The fire code's language is that it may enter the property, but there's no assurance that that will be necessarily enforced because the Deer Springs Fire Department is the fire authority having jurisdiction. Or if the agreement with the county between Deer Springs is terminated, there's no guarantee. But even beyond that, the bigger concern is that the county, any fire authority having jurisdiction, cannot simply go on to private property. That would be a trespass. They have to undergo the abatement process, which is time-consuming and complicated and could run years out, theoretically, if a property owner challenged a notice to abate. And a court ultimately decides we could be years out, again, delaying the time in which the county needs to conduct the abatement. I'm wondering this demand by the county for the developer to get 50 easements for this kind of abatement work in advance of the county even processing the application, the permit, for the development. Doesn't that just say that we're essentially just disapproving your project? No, Your Honor. It's not going to happen. I don't think that there's evidence that could create a tribal issue of fact one way or another because plaintiffs didn't pay money. I'm talking as a theoretical, logical matter. I mean, there were people who – what particular area of San Diego are we talking about? So this is an unincorporated area of San Diego where there's a lot of brush. It's not highly occupied. Where is it located specifically? Northern County of San Diego in a rural area of the unincorporated portion of the county of San Diego. What would be the freeway? Oh, Your Honor, I'm so sorry. I actually am recently relocated to San Diego. I'm more familiar with San Diego. At this point, I guess you would be. Yes, I'm so sorry. So I don't know the freeway to help orient you. Like if you're going down the 15 going down beyond the – you're talking – I would say it's certainly closer inland. Am I right? The 15 south. Right. It's on the east side. East side of the 15. And what's – do you know the cross highway? Is it 78? No. 395. Oh, 395. Okay. Old highway 395. Okay. I know exactly what you're talking about. So right now it's a very low density area. There are only approximately 81 residences in the area. And plaintiffs wanted to increase the allowable density at the project site by nearly 1,600 percent. But I did want to touch on Judge Bennett's point. The county, if the developer had been able to get all these easements, was the county going to approve the project? I can't speak to the Board of Supervisors on that point, Your Honor, but I know that it could have. But here's the problem. Yes. Their argument, which I'd like you to respond to if you can, is that this was a precondition, that they were supposed to go by 50 easements. I think it's 48 at one place in the record, but whatever. A lot of easements. And if the project were not approved, they'd be left holding 50 easements. Your Honor, I think that goes to the concern about Kuntz, Nolan, Dolan, and the unconstitutional conditions doctrine. What plaintiffs wanted was for the county to approve the project with post-condition approval, so that if plaintiffs then did not obtain the 50 easements, the county would be left in the position of exercising eminent domain or waiving the condition, which would create the same concern that the planning commission was attempting to avoid by requesting the easements in the first place. And that is perfectly consistent with Nolan, Dolan, and Kuntz, all of which confirm that the government may require property owners to pay to mitigate the direct impacts of any proposed development. And it's worth repeating that the... It also says that any restriction may constitute a taking if it's not reasonably necessary to effectuate what seems to me to be an entirely reasonable goal. Everybody's concerned about fire, right? Correct. But I'm trying to figure out why this condition was reasonably necessary given that the county had authority to require the brush to be cleared already. What's your best answer to that? Because the options with respect to what the fire code allowed wouldn't ensure that the county fire had a continuous legal means by which to enter the property of these private property owners.  They don't, Your Honor. The fire code seems to allow it. It doesn't allow... It's an administrative procedure, and the chief or fire marshal was frustrated that was going to require a delay. I appreciate that your position is that the homeowners have this duty and that they may be neglectful, and this provision hasn't been enforced. But I'm trying to figure out what your best argument is that this condition was reasonably necessary, and I haven't been shy about saying I'm concerned that it seems as though a holdout could have stopped this whole project. The concern is simply the delay in time, Your Honor. I understand that your sticking point is the abatement process, but we would have to... The county would... Any fire authority having jurisdiction would have to endure that, and there are many different layers that would be out of county fire's control in determining whether or not ultimately they could enter the property and conduct vegetation. So at the end of the day, the concern is human life, frankly. As I said, the ultimate goal and concern is entirely reasonable. It seems to me on both sides here. What is the best place where I can find in the record this discussion of the delay and the reason for the delay? Other than the fire code. I've read the fire code, and I've read the deposition testimony. The abatement process? Okay. Your Honor, I would direct you to... I'm so sorry. One second here. The expert report of Fire Chief Mitchum, that's at volume 16, starting at page 4206, and also his declaration, and that's at volume 20 of the excerpts of record beginning at page 5548. Thank you. And that goes thoroughly into the concerns that the county had with respect to all of the alternative proposals that plaintiffs offered in lieu of obtaining the easements. And I also want to emphasize, with respect to whether or not this was a taking or an unconstitutional condition, the district court relying on this court's decision in Ballenger v. City of Oakland acknowledged what Justice Sotomayor's concurrence in the recent unanimous sheets decision reminded us all of, and that is, in the takings context, an important threshold question in the unconstitutional conditions doctrine analysis is whether the permit condition would be a compensable taking if imposed outside the permitting context, because only then does Nolan Dolan's scrutiny apply. The answer to that threshold question here is no, because if we set aside the benefit of permit approval and the county had gone on to these West Lilac Road residents and demanded 20-foot easements to conduct fuel modification, that would have been a taking of their property, not plaintiff's. And plaintiff's contention that the county was simply requiring them to do that which the county would otherwise have to do through eminent domain is simply inaccurate, because the county is not obligated or required to engage or apply its eminent domain authority and could have denied plaintiff's application all other boxes being tipped simply because it would have required the county to exercise eminent domain. And again, I do want to emphasize, the county had no need or want for these easements, but for the direct negative impacts that plaintiff's proposed development posed to the area residents, both existing and future. Let me ask you about that. Your briefing takes that position, too, that the county had no need or want, but it seems like there's an existing need, and that's why we see these photos of the trees growing over the road, for the sake of the... even for the status quo. There isn't the same degree of need, Your Honor. Currently, the density of this area is quite low. That seems to be the problem. On the record, I think it's pretty tough for the county to say there's no need, no benefit, because we have every reason to think that they're legitimately concerned and want to make sure this is safe and reasonable, but there's an additional load per suit to judge. Significantly. Ward loss points, 1,700 more homes. But how is this not a benefit to the county? How is the property? The easements. I'm sure there are benefits to the county whenever we have additional revenue coming into the county, but that cannot be the greatest concern when we have this concern for human life. I think Judge Kristen, maybe I'm wrong, but I think Judge Kristen was asking not how money coming in from the development would be a benefit to the county, but how is not clearing the brush a benefit to the county? Oh, it's not a benefit for a few reasons. I mean, if there's no need to burden private property owners' property, the county doesn't want to do that. I mean, and right now, given the low density in this area, it doesn't need to conduct fuel modification as frequently to the same degree. My understanding, so this is helpful, and Judge Bennett is correct about where my question was going. Thank you. But my understanding is that the testimony spoke to the fact that it's overgrown now, that the property owner's obligation to keep the brush cut back has been ignored or, you know, not very carefully abided by, but the city or county, rather, fire officials were taking the position that they simply don't have the resources to sort of enforce everything at once, not that they thought it was in compliance and not a problem. So it seemed to me that the city, county, forgive me, had a preexisting concern about clearing that brush. Do you think I have an incorrect premise? No, I think it's correct to a point. As the evidence in the record reflects, the county is large. There's only so many resources in order to conduct the fuel modification, and the lower the density in a particular area, it may not occur as frequently. But now we're talking about increasing the load by nearly 1,600%. And again, that would require an amendment to the county's general plan because the county's general plan in this particular project site is limited to no more than 110 single-family detached dwelling units and no commercial uses. So it would need to take place much more frequently and to a greater degree. The photos show brush along the right-of-way along the road, and the county already has, you know, easement and authority to clear within the existing right-of-way. It was beyond that, and the county fire in consultation with this independent wildfire risk mitigation firm believed that was necessary. I have just a related question, and then I'm going to leave you alone. My view of the record is that on December 16th, the fire marshal SIBIT sent an email saying that the proposed project included significant new mitigation measures and it was sufficient, and then two weeks later, December 30th, the same person emailed the deputy fire chief and said that it didn't include enough. And at his deposition, he was asked about those two emails, conceded, yes, one directly contradicts the other, but I never saw an explanation. In the deposition, he said he couldn't recall what caused him to change his mind. I'm sorry. Are you talking about Mr. Nissen, or SIBIT, David SIBIT? Fire Marshal SIBIT was the deponent. He's the author of these two emails. He was sending them to Nissen, but there's an about face here, and the response you just gave about the fact that there was this really large increase in load was always true because it's always been a project of 1,700-some homes, and yet this is a flip-flop. I don't mean that disrespectfully, but it is an about face, and he's acknowledged in his deposition testimony here that it's a direct contradiction but can't remember why he flipped on that. And so I am really at a loss to make sense of this record. Your Honor, I'm not sure what the dates are, but I... December 16, 2019 and December 30, 2019. Your Honor, I'm so sorry. I can't speak to that discrepancy, but I can say that between 2015 when the Planning Commission initially recommended approval and 2020 when it recommended denial, there was the worst wildfires in California's history. And so now the county fire taking responsibility for this area, which previously had been overseen by the Deer Springs Fire District, had greater concerns. Throughout California, the California Fire Department was saying we need to be all the more careful because of this risk of entrapment, and there was a wildfire not far from the project site during that time. I'm so sorry. Keep going. So, counsel, I want to ask the question I asked your friend. Are you aware of any case since Coons in which either the Supreme Court, any federal court of appeals, or for that matter any federal court, has answered the question left open in Coons in a way favorable to your friend? That is, the permit is denied, the condition is never imposed, nothing is taken, but we're going to allow damages under 1983 for a diminution in property. Are you aware of any case which has answered the question left open in Coons? No, Your Honor, and I acknowledge that I searched. And what I would say is that 1983, in order to recover damages, one must establish injury, and that is what's missing here. We have no taking. But they've claimed, though, that there's a diminution in property, and one can imagine thousands. I mean, I think this is part of what Justice Kagan's dissent in Coons said. One can imagine thousands of lawsuits. Every time there's a condition imposed that's never complied with, our property is worth less. And are you aware of anything that says, yes, you can recover that under 1983 for a diminution because of a supposed Nolan Dolan condition that was never imposed because it was rejected by the applicant? No, Your Honor, I am not. I just have one follow-up question with Judge Wardlaw's permission, because you're over time. We're the ones who've taken you over time. That's not why the district court dismissed this. Correct. Right. And so if that's what we were relying on, and I think Judge Bennett raises a really good point, but I'm trying to figure out why amendment would be futile, because they certainly could have requested and could request injunctive relief, could they not? I suppose it's possible, Your Honors, but we're not there. They didn't do that. Sold the property, right? So they don't own it anymore, so there would be no injunctive relief that could benefit these plaintiffs. That's a good point. Yes, plaintiffs no longer own the property. That's not why the district court dismissed, right? That's correct. Okay. Thank you. All right. Thank you, counsel. I will give you two minutes more. Two minutes? Thank you. Your Honor, Justice Christensen, you asked about testimony requiring by the county to require us to give over those easements, and I mentioned NISN, but also the deed of easement document they prepared and required included a successor and a science provision, and as I recall the record, it's the Slovic and NISN testimony. When I asked about that assignment provision, they said they would use it as part of the final conditions to get these easements. So it's clear to me that there is record evidence that this was not unlike the Nolan situation. They set this up so we had to get them, but then they planned to get them later when we needed their project approval, and they had over us the final conditions, and they were going to get these easements through the assignment as part of a condition in the final conditions, and that's in effect what Mark Slovic, senior guy, project manager, and Deputy Chief NISN testified to, and that's in the record, so I wanted to expound on that topic. Second, there was testimony that the county required us to get the easements for the county's benefit, and the easement document itself in the recital says that they're necessary for public safety, so there is county benefit here, and we would have no need to spend upwards of $2.5 million acquiring these easements than to have the project denied. We're now sitting with 50 useless easements that we paid $2.5 million for. You mean you would be. You didn't buy any of them, right? No, we did not. You would be is what you mean. That's right. And, again, it's important that we're not being held to the standard, you know, this record is riddled with prerequisites to the easement condition. Oh, we didn't get a single easement. It doesn't matter if we didn't get a single easement. Well, it might matter that you're not eligible for damages. What's your best answer to that point that Judge Bennett made? Well, my best answer is I'm not here today on that issue. That's my best evidence, my best response, and that's for another day, and I do believe that under 1983 we're entitled to damages. That I don't have a case that says, yes, that's right, under 1983 you're entitled to damages is of no moment, particularly in this appeal. Now, you know, ultimately if we reverse because there is overwhelming evidence that the easement condition was a demand for both property and money, we may get to that issue. We may. And I don't know how that's going to come out. I don't. But I do have a statutory basis for it, and I don't need to have secured the easements for it. Under Kuntz, the denial of the permit is enough. Under Kuntz, it's the pressure to get to acquire the easements that's enough. I don't need to show necessarily these damages, although we will through that measure of damage we discussed. All I need to show is you burdened my constitutional right against taking. So, you know, that's for another day, that topic. And lastly, on the in limine, I would just ask the court to compare the three orders, the amended April 18 order, the other April 18 order. I think you're right that there was an error there, but why isn't it harmless? Because, Your Honor, it was used. The court then took that ruling and used it dispositively to assist it in saying we didn't have enough evidence. That the easements would cost money. That's right. And we have those declarations are the testimony I was going to use when I put the witnesses in the box. That's the line of inquiry I wanted to have. That's the line of inquiry I did based on interviews. The county never deposed these people. They brought this blanket motion to exclude all testimony that they didn't even know they were going to testify about. So, you know, and then they concoct these arguments about legal obligations and appraisals. I had no intention of going there. Did you oppose that part of the motion? We did see my declarations in the post-judgment motion. I called the order oblique. I offered up the offer of proof. I was trying to ask whether you opposed the notion the county took that the neighbors weren't qualified to give legal opinions about their obligation to clear the brush. I didn't agree with it, but I didn't oppose it because I had no intention of ever asking it. All right. Well, thank you, counsel. Thank you, Your Honors. I appreciate all the time and the questioning. Thanks. Thank you. So village communities versus the county of San Diego will be submitted.
judges: WARDLAW, CHRISTEN, BENNETT